**Kevin Patrick MORONEY, Plaintiff,**

v.

**UNITED PARCEL SERVICE, INC., Defendant.**

**No. CIV A. 97–2618–GTV.**

United States District Court, D. Kansas.

Oct. 14, 1999.

M. Ellis Rainey, II, Rainey, Byrum, Rainey & Sutton, LC, Overland Park, KS, for Kevin Patrick Moroney, plaintiffs.

Brian J. Finucane, James R. Holland, II, Bioff, Singer & Finucane, Kansas City, KS, for United Parcel Service, defendants.

## MEMORANDUM AND ORDER

VanBEBBER, Chief Judge.

Plaintiff brings this action alleging that defendant terminated his employment on the basis of a disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* The case is before the court on defendant's motion for summary judgment (Doc. 30). For the reasons set forth below, defendant's motion is denied.

## I. Standard for Judgment

Summary judgment is appropriate if the evidence presented by the parties demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A "genuine" issue of fact exists if the evidence is such that a reasonable jury could resolve the issue either way. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "material" if it is essential to the proper disposition of the claim. *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). The court must consider the record, and all reasonable inferences therefrom, in the light most favorable to the party opposing the motion. *Id.*

The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Id.* at 670–71 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the moving party will not bear the burden of persuasion at trial, that party "may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671 (citing *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts from which a reasonable jury could find in favor of the nonmoving party. *Id.*

## II. Factual Background

The following facts are either uncontroverted or viewed in the light most favorable to plaintiff's case: Plaintiff began

working for defendant in September 1980, and was terminated from his employment on April 18, 1997. Throughout his lifetime, plaintiff has suffered injuries to his back, as well as his left arm, shoulder, hand, hip, leg, and foot, and his right elbow, ankle, leg, and hip. As a result of these injuries, plaintiff's doctors have placed restrictions upon him, including restrictions against repetitively lifting more than thirty pounds, lifting more than fifty pounds, and repetitively bending, twisting, or lifting. In addition, as a result of these injuries, plaintiff experiences pain when he puts weight on his right foot and pivots to the right or stands on his tip toes; plaintiff sometimes experiences discomfort in his left leg and foot as well as rectal aching from walking; plaintiff experiences difficulty and pain when bending over, and bending over and picking objects up often causes flashes of pain to shoot across his penis; plaintiff has rectal and penile pain when lifting heavy objects; plaintiff experiences pain and numbness when he sits for periods of time greater than thirty minutes; plaintiff has difficulty standing in the same spot for more than a few minutes; plaintiff experiences cramps, numbness, and severe back pain while sleeping; plaintiff sometimes can hardly stand up due to the pain; and plaintiff is sometimes unable to keep up the house in that he is unable to lift a full basket of laundry, mow the yard with a push mower, rake the yard, swing a sledge hammer, or clean the garage floor.

On or about September 15, 1996, plaintiff was working for defendant as a package car driver, responsible for delivering and picking up packages for defendant's customers. On that day, due to his physical exertion at work, plaintiff was experiencing such great pain that a supervisor took him directly from his route to a hospital emergency room. The next day, September 16, 1996, defendant sent plaintiff to see its company doctor, Dr. Robert Brown, who released plaintiff to return to work with no restrictions. Plaintiff did not return to work, however, because he neither

wanted to work with the pain nor risk further damage to his body.

Following his appointment with Dr. Brown, plaintiff visited four doctors who restricted him from working due to his physical condition: Dr. William Cirocco wrote a note on October 3, 1996, stating that plaintiff had been in his care since September 16, 1996, and that he was unable to return to work indefinitely; Dr. Steven Simon restricted plaintiff from work on September 17, 1996, until a date "unknown"; Dr. Glenn Amundson released plaintiff from work on April 3, 1997, until his follow-up appointment on June 12, 1997; and Dr. Munger released plaintiff from work on June 2, 1997, until Dr. Amundson completed evaluation and treatment.

Defendant's company doctor, Dr. Brown, restricted plaintiff from working indefinitely after September 18, 1996, because he was using narcotic analgesics for pain in his rectum, which rendered him unfit to drive a commercial motor vehicle. On March 14, 1997, however, plaintiff informed defendant that he was no longer using narcotic analgesics. Defendant instructed plaintiff to report to Dr. Brown and, if released, return to work the following Monday. Plaintiff saw Dr. Brown on March 31, 1997, and was discharged as "unable to return to work." Plaintiff again saw Dr. Brown on April 8, 1997, however, at which time Dr. Brown released plaintiff to work full duty with no restrictions.

Plaintiff informed his supervisors in person on April 9, 1997, that he was not going to return to work as indicated in Dr. Brown's report. Plaintiff also sent a certified letter to defendant which was received on April 10, 1997, and stated that he was not going to report to work because he was restricted from working by his private physicians.

Defendant terminated plaintiff's employment on April 18, 1997, because he was "absent from work for three (3) consecutive days and failed to notify management

prior to [his] absence." Plaintiff claims this reason is pretextual, and he was really terminated due to his disability, as evidenced by the fact that he notified management prior to his absences and was verbally harassed by supervisors at work concerning his disability.[1]

### III. Discussion

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Without direct evidence, a plaintiff's ADA claim is evaluated under the *McDonnell Douglas*[2] burden-shifting analysis. *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 n. 3 (10th Cir. 1997). Accordingly, a plaintiff must first raise a genuine issue of material fact on each element of the prima facie case. *See id.* at 1323.[3] If the plaintiff succeeds, the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its adverse employment decision. *See id.* If the defendant carries this burden, it shifts back to the plaintiff to prove that the reasons proffered are pretextual. *See id.*

Defendant first argues that it is entitled to summary judgment because plaintiff is unable to establish that he has a "disability" as defined by the ADA. The ADA defines a disability as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Plaintiff claims that he suffers from a disability as provided in subsection (A).

■ Consideration of a claim under subsection (A) proceeds in three steps: First, the court determines whether the plaintiff has an impairment. *See Poindexter v. Atchison, Topeka & Santa Fe Ry. Co.*, 168 F.3d 1228, 1230 (10th Cir.1999) (citing *Bragdon v. Abbott*, 524 U.S. 624, 118 S.Ct. 2196, 2202, 141 L.Ed.2d 540 (1998)). Second, the court considers whether the major life activity upon which the plaintiff relies constitutes a major life activity under the ADA. *See id.* Third, the court asks whether the impairment serves to substantially limit the major life activity. *See id.*

■ Neither party disputes that plaintiff suffers from one or more physical impairments. Plaintiff claims to be substantially limited in the major life activities of lifting and working. Lifting is considered a major life activity under the ADA. *See Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1172 (10th Cir.1996) (holding that "an individual whose ability to lift is substantially impaired qualifies as a disabled person within the meaning of the ADA"). Working also constitutes a major life activity under the ADA. *See Nowlin v. K Mart Corp.*, 50 F.Supp.2d 1064, 1070 (D.Kan.1999) (citing 29 C.F.R. § 1630.2(i)). The question, then, is whether plaintiff's physical impairments serve to substantial-

---

1. Plaintiff claims that supervisors harassed him by ordering him to walk faster; telling him that if he ran, he could get his work done; and stating that all of his injuries were in his head. On one occasion, when he was complaining of his rectal pain, plaintiff claims that a supervisor commented to him "that's usually when you have to take a shit."

2. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

3. To establish a prima facie case of disability discrimination, a plaintiff must demonstrate that (1) he or she is a disabled person under the ADA, (2) he or she is qualified, i.e., he or she can perform the essential functions of the job with or without reasonable accommodation, and (3) the employer discharged him or her under circumstances giving rise to an inference that the discharge was based on his or her disability. *See Morgan*, 108 F.3d at 1323.

ly limit him in the major life activity of either lifting or working.

An impairment substantially limits a major life activity if the individual is unable to perform the major life activity, or is significantly restricted in the ability to perform the major life activity, as compared to the average person in the general population. *See* 29 C.F.R. § 1630.2(j)(1); *Pack v. Kmart Corp.,* 166 F.3d 1300, 1305 (10th Cir.1999). Whether an individual is substantially limited in a major life activity depends on the nature and severity of the impairment, its expected duration, and its expected permanent or long-term impact. *See* 29 C.F.R. § 1630.2(j)(2); *Pack,* 166 F.3d at 1305.

■ The court finds that plaintiff has presented sufficient evidence to survive summary judgment on the issue of lifting: Plaintiff has offered evidence that doctors have placed restrictions upon him including restrictions against repetitively lifting more than thirty pounds, lifting more than fifty pounds, and repetitively bending, twisting, or lifting. In addition, plaintiff has offered evidence that he is unable to lift a full basket of laundry; bending over and picking objects up often causes flashes of pain to shoot across his penis; and he experiences rectal and penile pain when lifting heavy objects. *See Equal Opportunity Employment Comm'n v. United Airlines, Inc.,* 185 F.3d 874, 1999 WL 397390 (10th Cir.1999) (finding sufficient evidence to withstand summary judgment on the issue of disability where the plaintiff presented evidence that she could not lift in excess of twenty pounds and could not perform everyday tasks such as vacuuming, cleaning, or carrying groceries). Because the court finds that plaintiff has presented sufficient evidence to withstand summary judgment on the issue of lifting, it does not need to address plaintiff's contention that he is also substantially limited in the major life activity of working. *See Lowe,* 87 F.3d at 1174.

Defendant next claims that it is entitled to summary judgment because, even if plaintiff qualifies as a disabled person for purposes of the ADA, the uncontroverted evidence shows that plaintiff was not denied a reasonable accommodation. Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). Reasonable accommodations may include reassignment to a vacant position. 42 U.S.C. § 12111(9)(B).

■ Defendant argues that the only accommodation that plaintiff claims to have been denied was a temporary transfer to an address clerk position until a feeder driver position became available. Defendant states that no vacancies existed in either of these positions at the time of plaintiff's request, and in order to assign plaintiff to either of these positions, it would have had to reassign other employees in violation of the seniority provisions of its collective bargaining agreements. In support of its argument, defendant offers evidence that plaintiff was unaware of any available address correction or feeder driver position that was available at the time he requested a transfer. Plaintiff's knowledge of available positions at the time of his request for a transfer, however, is irrelevant to the inquiry whether defendant denied plaintiff reasonable accommodations. Because defendant offers no other evidence in support of its position, the court finds that defendant has failed to meet its burden of demonstrating the absence of a genuine issue of material fact with respect to reasonable accommodations.

Finally, defendant claims that it is entitled to summary judgment because it has articulated a legitimate, nondiscriminatory reason for plaintiff's termination, and

plaintiff has failed to show that the proffered reason is pretextual. "To avoid summary judgment, a plaintiff need not demonstrate that discriminatory reasons motivated the employer's decision"; instead "the plaintiff's burden is only to demonstrate a genuine dispute of material fact as to whether the proffered reasons [are] unworthy of belief." *Morgan,* 108 F.3d at 1321–22 (citing *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995)).

Defendant argues that plaintiff was terminated because he failed to either report to work or notify management of his absence for three consecutive days following his release by Dr. Brown. Plaintiff has offered evidence, however, that he notified supervisors, both by certified mail and in person, that he was not going to report to work following his release by Dr. Brown. Furthermore, plaintiff has offered evidence that he was verbally harassed concerning his disability by several supervisors. Accordingly, the court finds that a genuine issue of material fact exists with regard to whether defendant's stated reason for plaintiff's termination is pretextual.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motion for summary judgment (Doc. 30) is denied.

**IT IS SO ORDERED.**